(10 App. Div. 605.)

O'BRIEN v. GENERAL SYNOD OF REFORMED CHURCH IN AMERICA
et al.

(Supreme Court, Appellate Division, Second Department. December 8, 1896.)

SALE OF INFANT'S LAND—PURCHASE BY GUARDIAN—VALIDITY.

Code Civ. Proc. § 1679, declaring that a purchase of real estate by a com-
missioner or other officer making a sale on foreclosure, "or a guardian of an
infant party to the action," is void, does not affect any guardians except
such as are appointed in the foreclosure action; and therefore a purchase in
good faith by a general guardian, or by a guardian in socage, is valid, sub-
ject, only, to the right of the ward to invoke the aid of equity to impress a
trust on the property in his favor, or to compel a conveyance to him to the
extent of the interest divested by the sale.

Appeal from judgment on report of referee.

Action by Frederick J. O'Brien against the General Synod of
the Reformed Church in America and others for partition. From
a judgment dismissing the complaint, on report of a referee, plain-
tiff appeals. Affirmed.

The opinion of J. T. MAREAN, to whom the cause was referred,
is as follows:

One Keran O'Brien died intestate in 1880, leaving a widow, Florinda O'Brien,
and nine children. One child, by a former marriage, was of age, and the other
eight children, by his wife Florinda, were minors, at the time of the purchase
by her hereinafter mentioned. Keran O'Brien, at the time of his death, owned
a piece of real estate which was subject to two mortgages, the first for $5,000,
the other for $2,000, the latter held by one Gianella. This latter mortgage was
foreclosed and the premises sold in 1886, and purchased by the widow, Florinda
O'Brien. There were some very old improvements on the property at the time,
which added nothing to its value, and she caused them to be demolished, and
erected upon the property two modern buildings, suitable to the location and
to the times, at an expense of upward of $20,000. She also paid off the $5,000
mortgage. She borrowed at the same time from the synod $25,000, which she
used specifically, to the extent of $5,000, in paying off the $5,000 mortgage, and
to the extent of about $15,000 in the erection of the buildings. The remainder
of the loan seems not to have been specifically used in paying the expenses of
the improvements. The loan was secured by three mortgages, made by Florinda
O'Brien, two for $10,000 each, one upon each of the new buildings, and the third,
for $5,000, covering the whole property.

I am satisfied that Florinda O'Brien in good faith believed herself the owner
in fee simple absolute of the property, and there is no evidence whatever or
claim of any unfairness in the sale, or that the price was kept down by any
misconduct on her part. There are no circumstances disclosed connected with
the sale to prejudice her title, except the bare fact of her relation to her minor
children at the time of the purchase. Their father being dead, she was charged
by the statute with the duties of guardian in socage until a general guardian
should be appointed, and those duties comprehended the duty to "safely keep
the inheritance of her ward." 2 Birdseye's St. p. 129, § 44; 3 Birdseye's St. p.
2516, §§ 5–7. It is elementary law that this duty was inconsistent with a pur-
chase at the foreclosure, for her own use, of the interests of her minor children.

It is claimed in behalf of the children that the sale was absolutely void; that
their estate was not divested, but remained in them precisely as though no sale
had taken place. It is claimed, on the other hand, by the synod, that their title
was divested by the sale; that Mrs. O'Brien acquired it subject, at most, only
to its being charged in her hands with a trust for their benefit. The difference
is radical. In the former case the O'Brien children stand upon purely legal
rights, with no duty to do equity as a condition, in which case it is very doubt-
ful if any allowance could be made in favor of their mother or her assigns for
improvements which were not at all in the nature of repairs. See Ford v.

Knapp, 102 N. Y. 135, 6 N. E. 283. In the latter case they are forced into the position of demanding equitable rights in a court of equity, and must do equity, which involves compensation for improvements, and proportional reimbursement of the moneys expended in the purchase and in the payment of the first mortgage.

In support of the former proposition section 1679 of the Code is cited. This provision of the Code is contained in title 1 of chapter 14, providing for the procedure in actions relating to real estate, among others, actions for the foreclosure of mortgages. It is as follows: "A commissioner or other officer, making a sale, as prescribed in this title, or a guardian of an infant party to the action, shall not, nor shall any person, for his benefit, directly or indirectly, purchase, or be interested in the purchase of any of the property sold; except that a guardian may, where he is lawfully authorized so to do, purchase for the benefit or in behalf of his ward. The violation of this section is a misdemeanor, and a purchase made contrary to this section is void." If the guardian meant by this section is merely a guardian ad litem in the action, then this case is not within it. Otherwise, it is clearly within it, and I am satisfied that the construction and effect given to similar provisions of law in reference to sales of real estate by executors or administrators to pay debts, under direction of the surrogate, must be given to this. Those provisions were considered in Forbes v. Halsey, 26 N. Y. 53, and Terwilliger v. Brown, 44 N. Y. 237, 241, and it was held that in a case within the prohibition no title passes, but the title remains in the original owner as though the sale had never been made. I cannot find that these cases have ever been overruled, or their authority in any manner questioned. Dodge v. Stevens, 94 N. Y. 209, is not within the letter of section 1679 of the Code, because the infant was not a party to the foreclosure at the sale in which the guardian bought. It, therefore, throws no light upon the question under consideration. The case mentioned follows the rule in equity, which has always governed purchases by persons standing in any relation of trust or confidence inconsistent with a purchase for one's own use. But, in my opinion, the guardian intended by section 1679 is simply a guardian ad litem in the action in which the sale is had. It will be observed that the statutes under consideration in Forbes v. Halsey and Terwilliger v. Brown regulated the action and defined the duty of a quasi officer of the surrogate's court, acting under the control and direction of the surrogate. Section 1679 of the Code seems to me to be intended not to prescribe any general rule for cases of purchase by one standing in a relation of confidence, but purchases by persons who in the particular action occupy the relation of officers of the court. The language of the section is: "The commissioner, or other officer, making a sale, as prescribed in this title, or a guardian of an infant party to the action," etc. The connection in which the provision relating to guardians is used seems to indicate only a guardian appointed by the court to take charge in the action of the interests of some infant party thereto, occupying a rank similar to that of the commissioner or referee who makes the sale. A provision in the Code of Procedure, altering the previously well-settled rule in law and equity relating to the acts of trustees of any description, seems to be out of place, while the definition and limitation of what a referee or guardian appointed by the court in an action may do is germane. Besides, no reason can be suggested why a general guardian of an infant should have here been forbidden to purchase at a sale in an action to which his ward was a party, while such purchases by trustees of any other description are left to be governed by the established rules of equity.

It results, from this, that the purchase by Mrs. O'Brien at the sale under the Gianella mortgage is within the rule applied in Dodge v. Stevens, in People v. Stock Brokers Building Co. of New York, 92 N. Y. 103, and in Boerum v. Schenck, 41 N. Y. 182. The legal title of the minor children was divested by the sheriff's deed, and vested in Mrs. O'Brien, subject to their right to invoke the powers of a court of equity to impress a trust for their benefit to the extent of the interests which had been so divested, or to compel a conveyance to them to that extent. That right is executory, and, from what appears in this case, will be enforced only upon performance of conditions precedent, the precise determination of which is beyond the scope of this case. Whoever appeals to a court of equity must do equity. Putnam v. Ritchie, 6 Paige, 390. The title acquired by Mrs. O'Brien under the Gianella foreclosure has, by her mortgage to the synod, the foreclosure thereof, and the purchase by the synod, become

vested in it. It is, of course, subject to any equities of the O'Brien children which have not been waived or extinguished, but the extent or conditions of which I do not determine.

The complaint seeks no equitable relief. It is framed upon the theory that the sale under the Gianella foreclosure did not divest the plaintiff's title. The conclusion which I have reached upon that question leads me to a dismissal of the complaint.

Argued before BROWN, P. J., and CULLEN, HATCH, and BRADLEY, JJ.

J. C. & H. C. Smith & Koepke, and Arthur K. Buxton (George G. Reynolds, of counsel), for appellant.

Sulphen & Lefferts (A. P. Bates, of counsel), for respondents.

PER CURIAM.    Judgment affirmed, with costs, upon the opinion of the referee.

---

SEWER COM'RS OF AMSTERDAM v. SULLIVAN et al.

(Supreme Court, Appellate Division, Third Department. December 2, 1896.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—ABANDONMENT BY CONTRACTOR.
   Under a provision that the city may enter and complete the contract in case the contractor "shall fail in any part of his undertaking," a statement from the contractor that, unless his claim for extra work is allowed, he will not proceed with the contract, is not such an abandonment as will justify the city in terminating it on an instant disallowance of the claim, when it knows that the contractor is still prosecuting the work, and has told the city's engineer that he would not quit till he had obtained legal advice, and consulted with his bondsmen.

2. CONTRACT—GROUNDS FOR TERMINATION—PLEADING.
   Where the complaint alleges but one ground for plaintiff's termination of a contract for breach of which he sues, it will be assumed that this was the only ground for termination.

3. SAME—ENGINEER'S ESTIMATE—WHEN CONCLUSIVE.
   Where a contract makes the engineer's estimate conclusive of the value of work done, the estimate can be attacked for the engineer's misconduct only, or for a palpable mistake appearing on its face.

Appeal from judgment on report of referee.

Action by the sewer commissioners of Amsterdam against Timothy Sullivan and others on a bond for the faithful performance of a contract. There was a judgment in favor of defendants, and plaintiffs appeal. Modified.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

W. Barlow Dunlap, for appellants.
M. E. Driscoll, for respondents.

MERWIN, J.    In November, 1888, Sullivan & Co., a firm of which the defendant Sullivan is the survivor, entered into a contract with the plaintiff for the construction of a sewer in the city of Amsterdam. The work was commenced by Sullivan & Co., and continued by them until April 5, 1889, when the plaintiff took possession and completed the work at a loss to the city, as the plaintiff claims, of about $1,300 over and above the contract price. This loss the